### SPERRY v. THE PITTSBURG SHORT METHOD SMELTING AND REFINING COMPANY ET AL.

1. ACTION—LOAN.

Money advanced to one who, although he was business manager of a corporation, obtained it in his own name and upon the security of his own property pledged for that purpose, cannot under the circumstances of this case be recovered of the company, as a loan, even though it was obtained for the benefit of the company and used for that purpose.

2. PRINCIPAL AND AGENT—UNDISCLOSED PRINCIPAL.

Except in cases where the question of an undisclosed principal is involved, a party seeking to charge a supposed principal must show at the outset that he gave credit to the alleged principal and that he intended, as far as he was concerned, to bind him; otherwise it would be immaterial whether the party with whom he dealt was an agent or not.

3. RATIFICATION.

By ratification a party estops himself to deny that a person ostensibly acting in his behalf was his agent, but there is no such thing as a ratification by an alleged principal of an act which was not intended, by any of the parties, to bind him.

4. CONDITIONS—BURDEN OF PROOF.

When an obligation upon which a recovery is sought was conditional, it devolves upon the party asserting the right to prove the happening of the event upon which the condition depended.

*Appeal from the District Court of Arapahoe County.*

Mr. THOMAS WARD, JR., for appellant.

Mr. CHARLES J. HUGHES, JR., and Mr. TYSON S. DINES, for appellees.

THOMSON, J., delivered the opinion of the court.

This suit was brought by W. F. Sperry to recover from The Pittsburg Short Method Smelting and Refining Company the sum of $1,500 which he alleged he had loaned to the defendant. The transaction was had with one George H. Chick, and the questions presented to the trial court were, first, whether Chick obtained the money as the agent of the company; second, whether he was such agent, with authority from the company to effect the loan in its behalf; and, third, whether, if there was no such authority originally, the acts of Chick in the premises were subsequently ratified by the company. At the conclusion of the plaintiff's case, and upon the evidence introduced by him, the court rendered judgment of nonsuit against him.

The only witnesses to the transaction were Chick and the plaintiff. The testimony of Chick was taken by deposition, and he was the principal witness in the case. From his testimony the following appears:

The defendant company had its principal office and business in Pittsburg, Kansas, and also operated a concentrating plant in Denver, Colorado. Chick was its manager and assistant treasurer. The loan was negotiated in Denver on the 5th day of January, 1893. Chick received $800 of the amount on that day, by Sperry's check on the Denver National Bank. The remaining $700 was obtained by draft drawn by Chick on Sperry, at Kansas City, Mo., on January 9, 1893. The check was payable to the individual order of Chick, and the draft was made by Chick individually. Except the check and draft there was no written evidence of the transaction. At the time the loan was agreed upon, Chick transferred to Sperry ten shares of the

capital stock of the company. This stock was the individual property of Chick. We copy the following questions and answers from the examination and cross-examination of Chick, which, together with the foregoing synopsis, embraces substantially all he had to say concerning the transaction :

" Q. Did you have any business transactions with the plaintiff in this suit in the month of January, 1893, while acting for defendant as its treasurer and manager? If so, please state what those transactions were. A. I did on both the dates mentioned, and while I was acting as treasurer and manager. Those transactions were borrowing money to the amount of $1,500 from the plaintiff. It was borrowed money in this way : It was a stock transaction ; that is, providing the stock was worth so much money a share, then he would take the stock ; if not, then I was to refund the money on stock, considering it *then* as collateral security.

" Q. If, in answer to Int. 4, you say you did have business transactions with the plaintiff on or about the 5th and 9th of January, 1893, state where they occurred and who were present, stating the exact dates and place. A. I went to plaintiff's office in the People's Bank building, room 408, in the city of Denver, on or about that date, to negotiate this loan upon this stock, and the loan was made with the understanding if the stock paid five per cent, or rather the business paid five per cent on the capital stock a month, he then was to take the stock; if it did not, then he was to have his money back with interest at one per cent per month. All that Sperry said in relation to the transaction was, ' I loaned Mr. Chick for the benefit of the company $1,500. * * * At the time I let Mr. Chick have this money, I took ten shares in The Pittsburg Short Method Smelting and Refining Company's stock.' "

It seems to us to be a legitimate conclusion from the foregoing evidence that Sperry, when he parted with his money, was not dealing with the company, or with Mr. Chick acting as the agent of the company, but with Mr. Chick individ-

ually. In so far as any light can be had from the check and draft, the transaction was between Mr. Sperry and Mr. Chick, each acting in his individual capacity. The evidence outside of these papers is that in consideration of the money, Chick transferred to Sperry ten shares of the company's stock, which was the private property of Chick; and the agreement, made at the time was, that if the business of the company paid five per cent per month on the stock, Sperry should keep the stock; otherwise the stock should be considered as collateral security, and Chick would refund the money to Sperry. Therefore, if the company's business yielded the specified profit, the transaction was a sale of stock; if not, it was a loan of money. The allegation is that it was a loan; and the plaintiff seeks to charge the company with the amount, on the hypothesis that Chick, in obtaining the money, acted as its agent, and that the transaction was with it through him. But the stock did not belong to the company; it was Chick's private property. If, therefore, there was a sale, as the parties contemplated there might be, it was a sale by Chick of his own property to Sperry, and Chick was dealing with Sperry on his own account. If the transaction turned out to be a loan, then, upon the refunding of the money, Chick was entitled to a return of his stock, because in such case it would be held by Sperry only as collateral security. If there was a sale, the transaction was Chick's; if there was a loan it was still Chick's to the extent, at least, of his receiving back the collateral he had pledged; so that if the company was bound by the agreement at all, it was only bound for the repayment of the money, or, in other words, for the redemption of Chick's stock. We are unable to dissect and take to pieces the agreement in this way. An agent cannot engage in a transaction which shall be his own if successful, and his principal's, if not. This transaction was unitary; it was indivisible; and it must be considered as an entirety. It was either wholly a transaction of the company, or no part of it was. In so far as it involved a sale of stock, or a pledge of stock with a right in the pledgor to reclaim it, it

was not a transaction of the company; and therefore the company was not bound by any part of the agreement.

No extended discussion of the law of principal and agent is necessary in this connection. There is no question of undisclosed principal in the case, and we conceive it to be the rule, where that question is not involved, that a party seeking to charge a supposed principal upon the contract of an ostensible agent must show, at the very outset, that he gave credit to the alleged principal, and that he intended, so far at least as he was concerned, to bind the principal; for if he did not, it would be entirely immaterial whether the party with whom he dealt was an agent or not; or, being an agent, how comprehensive his authority was. That a person is an agent does not preclude him from making contracts, in his own behalf; and by such contracts, himself, and not another, is bound. Now there is not in this record a syllable of evidence tending to show that a liability of the company, in any event, was contemplated by either party at the time the agreement was made and the transaction consummated. It is nowhere said that Chick approached Sperry as a representative of the company, nor can we infer from anything that is said that Sperry at the time relied upon the company, or intended to hold it to any responsibility. Not only is there a want of evidence of that kind, but there is evidence indicating that the reverse was the fact. Mr. Chick stated that, the company being pressed for money, he made an agreement with its officers to take the plant and run it himself, and keep them out of debt as far as possible; and that in pursuance of this agreement he afterwards ran the business himself, but in behalf of the company. It was after the business had been turned over to him that the alleged loan was made by Sperry. Mr. Sperry testified that, so far as he knew, the business was conducted by Chick in his own name. It may be that the money obtained was afterwards used for the benefit of the company, and it may be that Chick obtained the money for the purpose of so using it; but if he obtained it on his personal responsibility, and not on the responsibility

of the company, it is immaterial what disposition he made of it, or what disposition he intended to make of it when he received it. An agent· may borrow money on his own account, or obtain it by sale of his property, and give his principal the benefit of it. In such case a liability in his own favor against his principal may arise; but whatever cause of action the person with whom he dealt may have, is against him.

We dismiss the question of ratification by saying there was nothing to ratify. By a ratification a party estops himself to deny that a person ostensibly acting in his behalf was his agent. There is no such thing as a ratification, by an alleged principal, of an act which was not intended, by any of the parties to it, to bind him. The plaintiff entirely failed to show such connection of the company with the transaction as would authorize a judgment against it.

But there is still another reason why·the nonsuit was properly allowed. There was a sale of stock, conditioned on the company's business yielding a certain profit. It was only in the event of a failure to realize this profit that the money paid for the stock was to be regarded as loaned. As Sperry sued for it on the theory that it was a loan, it devolved on him to prove the facts which made it a loan. No such proof was offered, and the plaintiff therefore failed to show a cause of action against either Chick or the company.

The plaintiff complains that certain portions of the testimony of Chick were stricken out of his deposition. The testimony stricken out consisted, for the most part, of general statements that the money was paid for the company's benefit, and that his acts as manager were approved by the company. Among the statements stricken out we find none of any relevancy or materiality, or which could have any effect on the real questions in issue. They would have done the plaintiff no good if they had remained, and their rejection did him no harm.

The judgment must be affirmed.

*Affirmed.*